SHU-CHEN WU and
GEOGIANG YUE
7907 Horizon View Dr.
Riverside, CA 92506
phone: (626)428-9226
email: susanwu72@gamil.com
email: josephyue430@gmail.com
Defendants, In Pro Per

**FILED**

**MAR - 6 2025**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

1
2
3
4
5
6
7
8
9
10

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## RIVERSIDE DIVISION

11

In re SHU-CHEN WU

12

13

------------------------------------------------

14

15

EMILIO CERON,

16

**Plaintiff**

17

vs.

18

SHU-CHEN WU and

19

GEOGIANG YUE

20

**Defendants**

21
22
23
24
25
26
27
28

**Case No.: 6:22-bk-14173-RB**
**Adversary Case No.: 6:23-ap-01019-RB**

**Chapter 7**

**MEMORANDUM OF LAW AUTHORITIES
IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

**Hearing**

**Date: TBD**
**Time: TBD**
**Judge: Hon. Magdalena Reyes Bondeaus**
**Courtroom:303**
**Location: 3420 12th St., Riverside, CA 92501**

## I.  ISSUE ONE

**Plaintiff's Claim of Fraudulent Transfer Under UVTA (California Civil Code §3439 et seq.) Was False Because the Transferred Property with a Valid  Lien on It Which is Excluded Under UVTA (California Civil Code §3439 et seq.).**

The *Uniform Voidable Transactions Act (UVTA)* was adopted by California in 2015, The *UVTA* supersedes the former *Uniform Fraudulent Transfer Act (UFTA). UVTA* is enacted as *California Civil Code §3439 et seq.*

In *California Civil Code §3439.01(a), "asset"* is defined as "property of a debtor, but the term does **not include** the following:

(1) Property to the extent it is encumbered by a ***valid lien***.

(2) Property to the extent it is generally exempt under nonbankruptcy law.

(3) ..."
*(California Civil Code §3439.01(a)).*

In *California Civil Code §3439.01(g),* it is defined: "*lien* means a charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, a judicial lien obtained by *legal or equitable* process or proceedings, a common law lien, or a statutory lien." *(California Civil Code §3439.01(g)).*

In *California Civil Code §3439.01(n),*  it is defined: "*valid lien* means a lien that is effective against the holder of a judicial lien subsequently obtained by *legal or equitable* process or proceedings." *(California Civil Code §3439.01(n)).*

In the *Hasso v. Hapke* case, the Court of Appeals considered what is an "asset" and when is it "transferred" for the purposes of *UFTA.* Because property subject to a valid lien does not constitute an "asset" within the meaning of Civil Code §3439.01(a)(1), and a "transfer" within the

1  meaning of Civil Code §3439.01(i) means the transfer of an "asset", there was no "transfer" to

2  trigger the application of Civil Code §3439.04 and §3439.05. Consequently, there was no evidence

3  to show that [transferors] made a fraudulent transfer of assets within the meaning of the UFTA,

4  and that [transferee] received assets pursuant to such a fraudulent transfer. Thus, because there

5  was no transferred "asset", the court threw out plaintiff's claims of both actual and constructive

6  fraudulent transfer under UFTA. ***There is no transfer when a party enforces its lien*** and takes

7  possession of a security interest . (*Hasso v. Hapke,* 227 Cal. App. 4th (2014)).

8

9      On August 6, 2021, the quitclaim deed was executed and recorded at the county recorder.

10  This made a *"transfer"* as defined in *California Civil Code §3439.01(m),*

11

12      On January 10, 2022, the abstract of judgment was recorded at the county recorder office.

13  This created a lien on all the real properties which **Defendants** had interests (legal or equitable)

14  in Riverside County, and this lien was attached to the equitable interest of **Subject Property**

15  specifically. This is a *"valid lien"* which is effective against the subsequent judgement lienholder.

16  (*California Civil Code §3439.01(g) and §3439.01(n)).*

17

18      *UVTA* clearly states that a transfer of property which subject to a *"valid lien"* is not a

19  fraudulent transfer and a *"valid lien"* is defined as a lien that is effective against other subsequent

20  judicial (judgement) lienholders. As a creditor, **Plaintiff** placed a *"valid lien"* on the **Subject**

21  **Property** and caused the **Subject Property** excluded from the definition under *California Civil*

22  *Code §3439.01(a)(1).*

23

24      Therefore, *UVTA* does **not** apply  to  the **Original Transfer**. The "fraudulent transfer"

25  claimed by **Plaintiff** is false.

26

27

28

**II. ISSUE TWO**

**Plaintiff Failed to Demonstrate the Cause of Action on His Alleged *"Fraudulent Transfer"* in Violation of California Civil Code §3439 et seq. Because the Transfer Was Cancelled under California Civil Code §1688 et seq. The Transfer Was Revoked (Nullified) by Mutual Rescission of the Deed.**

All types of contracts, including deeds, mortgages, leases, and promissory notes, may be rescinded (revoked) under *California Civil Code §1688.* In the section of the law, it is stated that " [a] contract is extinguished by its rescission." As stated in the *California Civil Code §1689(a),* it is coded that "[a] contract may be rescinded if all the parties thereto consent."

In essence, cancellation of an instrument, a contract or a deed, is a request for rescission that places the parties where they were before the instrument ever made. *See Deutsche Bank National Trust Co. v. Pyle,* Cal. App. 5th 513,523 (2017).

As in **Plaintiff's** Adversary Complaint, **Plaintiff** claimed that he is entitled to relief for the *"fraudulent transfer"* made by **Defendants** pursuant to *California Civil Code §3439.07.* In the section of the code, there are remedy provisions such as (1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim, or (2) an attachment or other provisional remedy against the asset transferred or its proceeds in accordance with the procedure. ( *California Civil Code §3439.07)*

A deed is a written instrument (a document) that conveys or transfers the title of a property; it is an executed conveyance and operates as a  present transfer of real property. (*Estate of Stevens,* 28 Cal. 4th 665, 672 (2002)). A deed is also considered a written contract and is subject to the rules applicable to and governing contracts. *Johnston v. City of Los Angeles,* 176 Cal., 479, 485 (1917).

Also, in *California Civil Code §1040,* it is defined: "[a] voluntary transfer is an executed contract, subject to all rules of law concerning contracts in general; except that a consideration is not necessary to its validity." (*California Civil Code §1040*).

As shown in **Exhibit #1,** the quitclaim deed (the original deed) was executed on August 6, 2021. According to the deed, the legal interest on the title of **Subject Property** was granted by **Defendant(Susan)** as grantor to **Global** as grantee.

As shown in **Exhibit #2,** the quitclaim deed (the subsequent deed) was executed by **Defendant(Susan)** on behalf of **Global** on April 18, 2022, then recorded on April 19, 2022. According to the deed, the legal interest on the title of **Subject Property** was granted by **Global** as grantor to **Defendant(Susan)** as grantee.

Accordingly, for mutual rescission purpose, the original quitclaim deed was "rescinded" by mutual agreement voluntarily between parties, **Defendant(Susan)** and **Global**. *(California Civil Code §1689(a)).* This action made the original deed extinguished pursuant to *California Civil Code §1688.*

The subsequent quitclaim deed restored the status of original deed back to its prior status before transferring of **Subject Property.** That is, the ownership is the same before and after the transfers. ( See *Deutsche Bank National Trust Co. v. Pyle* case). In essence, cancellation of an instrument is a request for rescission that places the parties where they were before the instrument was ever before.

All of acts result in the remedy stated in *California Civil Code §3439.07(a)* – avoidance of the transferred asset (interest on the title of **Subject Property).** That is, the asset (the legal interest on the title of **Subject Property)** is retained in the **Defendants'** estate.

**III. ISSUE THREE**

**Plaintiff Failed to Provide Any Evidential Facts to Support His Claim on the Non-Dischargeability of the Judgement Debt Against Defendants under 11 U.S.C. §523(a)(2)(A) for Financial Fraud.**

Five elements are required to justify a claim of non-dischargeability under 11 U.S.C. §523(a)(2)(A). 11 U.S.C. §523(a) sets forth certain types of debts that are excepted from discharge from bankruptcy petition if the party in interest is able to establish the necessary elements. That is, the **Plaintiff** (the judgment creditor) has the burden of proving all elements of the claims for relief asserted by a preponderance of the evidence. *In re Dakoda,* 284 B.R. 711,721 (Bkrcy. N.D. Cal. 2002). Under 11 U.S.C. §523(a)(2)(A), it provides an exception from the discharge of any debt for money, property, or services, to the extent that such debt was obtained by *false pretenses, a false representation, or actual fraud,* 11 U.S.C §523(a)(2)(A).

Under 11 U.S.C. §523(a)(2)(A), it requires a showing of actual fraud rather than constructive fraud or fraud implied in law. **Plaintiff's** claim of non-dischargeability under 11 U.S.C. §523(a)(2)(A) requires **Plaintiff** (the creditor) established *each* of the following elements:

   *(1)* The debtor made a representation.

   *(2)* The debtor knew *at the time* the representation was false.

   *(3)* The debtor made the representation with the intention and purpose of deceiving the
      creditor.

   *(4)* The creditor relied on the representation. And

   *(5)* The creditor sustained damage as the proximate result of the representation.

*In re Apte,* 96 F.3d 1319, 1322 (9th Cir. 1996); *in re Kirsh,* 973 F. 2d 1454, 1457 (9th Cir. 1992).

Under 11 U.S.C. §523(a)(2)(A), the creditor must show *actual fraud,* not just merely intent implied in law, or constructive intent. The requisite intent may, however, be inferred from the

1  totality of the surrounding circumstances. *In re Dakoda,* 284 B.R. at 721 (citing to *in re Anastas,*

2  94 F. 3d 1280 (9th Cir., 1996)).

3

4  In addition, under 11 U.S.C. §523(a)(2)(A), the creditor must show that the debtor's fraud

5  was a proximate cause of the damage to the creditor. *Field v. Mans,* 516 U.S. at 61, 64. In other

6  words, the creditor needs to detail the debt as an exception to the dischargeability "resulting from"

7  or "traceable to" the alleged fault.

8

9  However, **Plaintiff** does not provide any supportive evidence except making a claim falsely

10  on the issue raised here. No allegations are material for testing sufficiency of 11 U.S.C.

11  §523(a)(2)(A).

12

13  **IV. ISSUE FOUR**

14  **Plaintiff Failed to Provide Any Evidential Facts to Support His Claim  on the Non-**

15  **Dischargeability of the Judgement Debt Against Defendants under 11 U.S.C. §523(a)(6)  for**

16  **Willful and Malicious Injury.**

17

18  Under 11 U.S.C. §523(a)(6), it also excepts from discharge debts *"for willful and malicious*

19  *injury by the debtor to another entity or to the property of another entity..."* (11 U.S.C.

20  §523(a)(6)). A willful and malicious injury under 11 U.S.C. §523(a)(6) requires proof of a

21  "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury"

22  *Kawauhau v. Geiger,* 523 U.S. 57, 61 (1998).

23

24  Under 11 U.S.C. §523(a)(6) to meet the willful injury requirement. **Plaintiff** must show

25  either that the debtor had a subjective motive to inflict the injury or that the debtors believed that

26  injury was substantially certain to occur as a result of  their conduct. *In re Su,* 290 . F 3d 1140,

27  1143 (9th Cir, 2002). In *re Su* case, the Ninth Circuit noted that willfulness and malice are two

28  separate requirements that are not to be conflated into a single injury and made it clear that each

alternative prong of willfulness showing must be based on a subjective standard. The *subjective*

standard focuses on the debtor's state of mind and precludes application of 11 U.S.C. §523(a)(6)

non-dischargeability provision short of the debtor's *actual* knowledge that harm to the creditor

was substantially certain. *In re Su,* 290 F. 3d at 1146. While bankruptcy law governs whether a

claim is non-dischargeable under 11 U.S.C. §523(a)(6), the court looks to *state law* to determine

whether an act falls within the underlying *tort*. *In re Bailey,* 197 F. 3d. 997, 1000 (9th Cir. 1999);

see also *Lockerby v. Sierra,* 535 F. 3d 1038, 1041 (9th Cir. 2008). It is vital to note the debts arising

from recklessly or negligently inflicted injuries are not within the scope of 11 U.S.C. 523(a)(6)

*Kawauhau v.Geiger,*523 U.S. at 64; see *in re Quari,* 357 B.R. 793, 798 (Bkrcy. N.D. Cal, 2006).


    A *malicious injury* under 11 U.S.C. §523(a)(6) involves:

    **(1)**    a wrongful act;

    **(2)**    done intentionally;

    **(3)**    which necessarily causes injury; and

    **(4)**    is done without just cause or excuse.


    Except the claim of *"fraudulent transfer."* made conceivably, **Plaintiff** does not provide

any preponderance of evidence of *"willful and malicious injury by the debtor"* to **Plaintiff.**

## V. ISSUE FIVE

**Plaintiff Attempted to Mislead that the Judgment Debt was Resulted from a Fraudulent
Act. The Fact is the Judgment Debt Had Come from a Breach of Contract Act that Makes
the Judgment Debt Dischargeable in This Case.**


    The Ninth Circuit, *in re Jercich,* 238 F.3d 1202, 1206 (9th. Cir. 2001), held that a breach

of contract must be accompanied by some form of "tortious conduct" to give rise to "willful

malicious injury". The Bankruptcy Court for the Northern District of Illinois followed the Ninth

Circuit interpretation of 11 U.S.C. §523(a)(6) *in re Salvino,* 373 B.R. In *Kawauhau v. Geiger,* 523

1  U.S. 57 (1998) held that the phrase "willful and malicious injury" is one that "triggers in the

2  lawyers mind the category intentional tort." Additionally, the common law treats willfulness and

3  malice as irrelevant in contract cases, where punitive damages are generally held to be

4  unavailable. *Id.* at 589.

5

6  According to *the Statement of Decision* (Filed 11/12/2021, Case No. RIC2003142), the

7  judge, Carol Greene, accepted **Plaintiff**'s allegation on the cause of action for ***breach of contract.***

8  Actually, the alleged issue was a dispute regarding earnest money deposit ("EMD") **Plaintiff**

9  deposited for purchasing the property at  16747 Catalonia Drive, Riverside, California. **Plaintiff**

10  withdrew the purchase per loan contingency and did not provide a valid notice of cancellation of

11  contract and any proofs of denial letter (also known as "adverse action notice") issued by a

12  qualified lender (not a loan broker) required under the Equal Credit Opportunity Act (ECOA) and

13  the Fair Credit Reporting Act (FCRA). Regardless of the lack of evidence, the court still made the

14  decision in favor of **Plaintiff**.  **BREACH OF CONTRACT** alleged by **Plaintiff** was the only

15  cause of action accepted by the court. "Willfulness and malice" are irrelevant in this case. See

16  *Statement of Decision* **Exhibit #9** .

17

18  Accordingly, the debt from the judgment in favor of **Plaintiff** is dischargeable. Neither 11

19  U.S.C. (Bankruptcy Code) §523(a)(2)(A) nor §523(a)(6) for non-dischargeability apply to the

20  debt,  a judgment merely from breach of contract.

21

22  **Plaintiff** in the *Opposition to Motion to Dismiss* argued that "[d]efendants attempt to cast

23  as a mere *breach of contract ... "* The answer is yes, this is a *breach of contract* case. The **Plaintiff**

24  attempted to set their claim to be *"willful and malicious"* or *"fraudulent"* conducts caused by

25  **Defendants.** When in fact **Plaintiff's** claim is a "willful" misrepresentation which causes a tortious

26  damage against **Defendants.**

27

28  **VI. ISSUE SIX:**

**Plaintiff Failed to Provide Facts for His Claim of "No Consideration" Associated with the Original Transfer of the Subject Property.**

When a quitclaim deed or grant deed is recorded at the county recorder office, a documentary transfer tax is imposed by the county under *California Revenue and Taxation Code (R&T)*. The county is authorized to levy the document transfer tax whenever real property is conveyed from one party to another party. However, some transactions are exempt from the documentary transfer tax. Under R&T Code, the transaction exemptions from the documentary transfer tax include:

(1) Conveyance transferring interest into or out of a living trust (*R&T §11930*).

(2) Conveyance changing the manner in which title is held (*R&T §11911*).

(3) Court ordered conveyance not pursuant to a sale (*R&T §11911*).

(4) Conveyance given for no value (*R&T §11911*). Or,

(5) Conveyance where the grantor and grantees are comprised of the same parties and hold the same proportionate interest ( *T&R §11925(b)* ).

**Plaintiff** found that the quitclaim deed for the **Original Transfer** had shown the *"Documentary Transfer Tax"* declared by grantor, **Defendant(Susan)**, as $0.00. In fact, the zero dollar *Documentary Transfer Tax* is not related to *consideration* in the transaction. The transaction fell under a Documentary Tax Exemption as pursuant to *the California R&T Code, s*pecifically under *R&T §11925(b)*. **Defendant(Susan)** as the grantor held 100% ownership interest on the **Subject Property.** In the conveyance, **Global** (a separate entity)  was the grantee and **Defendant(Susan)** held 100% of stock shares of **Global.** "Same parties" and "hold the same proportionate interest" constitute the requirements of the exemption from the documentary transfer tax. See *T&R §11925(b)*.

1       Under *California Civil Code §3439.04(a),* it is stated that: "A transfer made, or obligation

2  incurred by a debtor is *fraudulent* as to a creditor, … (2) Without receiving a reasonably equivalent

3  value *in exchange* for the transfer or obligation …" (*California Civil Code §3439.04(a)(2)*). Also,

4  under *California Civil Code §3439.04(b)),* it is stated that: "In determining actual intent …

5  consideration may be given, …, to any or all of the following: …(8) Whether the value of

6  *consideration* received by the debtor was *reasonably equivalent* to the value of the asset transferred

7  or the amount of the obligation incurred." (*California Civil Code §3439.04(b)(8)*).

8

9       In the original transfer, **Defendant(Susan)** granted her legal interest to **Global** for the

10  800,000 shares of corporation stock. **Defendant(Susan)** retained her equitable interest on the

11  **Subject Property.** In the transaction, the ownership interest on the **Subject Property,** a real

12  property, was in exchange with the corporation's stock, a personal property. The value of real

13  property interest is *exactly equal to* the value of corporation shares. The real property legal interest,

14  an asset in **Defendants'** estate before the conveyance and the personal property of stock shares of

15  **Global** becomes an asset in **Defendant's** estate after the conveyance. This satisfies for the

16  "*consideration*" requirements for both sections of the code. (*California Civil Code*

17  *§3439.04(3a)(2); §3439.04(b)(8)).*

18

19  **VII.   ISSUE SEVEN**

20  **Plaintiff Failed to Demonstrate Any Facts to Support His Allegations on Actual Fraud, the**

21  **Intent to Defraud Him or to Avoid the Judgment Debt or to Cause Him Injury or Damage.**

22

23       In *California Civil Code §1572,* it is defined that "*actual fraud"* as that " [a]ctual fraud…

24  consists in any of the following acts, committed by a party to the contract, or with his connivance,

25  with intent to deceive another party thereto, or to induce him to enter into the contract:

26  1.  The suggestion, as a fact, of that which is not true, by one who does not believe it to be

27     true;

28

2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;

3. The suppression of that which is true by one having knowledge or belief of the fact;

4. The promise made without any intention of performing it; or

5. Any other act fitted to deceive."

*(California Civil Code §1572)*

As the definition of "burden of proof". *California Evidence Code §115* stated that "the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court... Except as otherwise provided by law, the burden of proof requires proof by a *preponderance of the evidence.*" (*California Evidence Code §115*).

Although the transferred property is excluded under UVTA. The section of *California Civil Code §3439.04* is cited here for discussion. In the section of *§3439.04*, it is defined that *"(a)* A transfer made or obligation incurred by a debtor is *voidable* as to a creditor, whether the creditor's claim arose *before* or after the transfer was made ..., if the debtor made the transfer ...: *(1) With actual intent to hinder, delay, or defraud* any creditor of the debtor..." In the following section of *§3439.04(b),* it further set forth that: "*(b) In determining actual intent* under par. (1) of subdivision (a) ... consideration may be given, among other factors, to any or all of the following: (1)...(11)," In the subdivision (c) of the section, it is provided that "[a] creditor making a claim for relief under subdivision (a) has burden of proving the elements of the claim for relief by *preponderance of the evidence.*" (*California Civil Code §3439.04*).

**Plaintiff's** claims are based on an **undetermined** "Fraudulent Transfer", which is **not a fact!**

**Plaintiff** does not take the "*burden of proof*" to the level of *preponderance of evidence* as required by the law. **Plaintiff** has not even reached the proof level of "the existence or nonexistence of a fact". (*California Evidence Code §115*),

## VIII.  ISSUE EIGHT:

**Plaintiff Falsely Claimed that Global Was Unfunded or Underfunded Because Plaintiff Misrepresented Global Capitalization as Pursuant to Federal IRC Code and California Corporation Code.**

California Corporation Code does not require a minimum amount of capital (the "fund" as argued by **Plaintiff**) to be invested in a corporation at the time of founding. A California corporation must sell its shares for legal consideration, such as cash, property (real or personal), past services or promissory notes . A person who transfers a property (but not services) to a corporation in exchange for stock does not recognize income at the time of transfer under *26 U.S.C. (IRC) §351.* Under IRC Code §351, "qualifying property" includes tangible and intangible assets such as real estate, equipment, patents and trademarks that can be transferred to a corporation in exchange for stock shares. To maintain the tax-free status, the transferor must not receive other forms of consideration such as cash or debt relief.  (*See www.irs.gov / business*).

To establish a corporation in California, legal requirements only include creating *corporate bylaws* and filing *articles of incorporation* with the  California Secretary of State. (See **Exhibit # 3).**

**Plaintiff** argued that **Global** was incorporated "unfunded" or "underfunded" as argued falsely in his Adversary Complaint.  In considering tax implications and managing finances, **Defendant(Susan)** invested the **Subject Property** into **Global** as its initial capital in exchange with **Global's** stock. This is **Defendant's** ordinary business operation practice. For this reason, **Global** was sufficiently capitalized ("funded") to sustain a substantial business operation.

The shareholder's interest is ownership of the stock held in a corporation. The real estate is owned exclusively by the corporation, an entity separate from its individual stockholders. The

1  interest of the shareholder in the corporation is personal property. *Wardley Development, Inc. v.*

2  *Superior Court, 213 CA 3d. 391(1989).*

3

4       At the time of founding **Global,** 800,000 shares of **Global's** stock had been issued. The

5  per share value at the time of transferring was determined by the market value of the **Subject**

6  **Property** divided by the number of units issued. All the operations were conforming with the law.

7

8  **IX. ISSUE NINE:**

9  **Plaintiff Claimed that the Appraised Value Was Below the Market Value and Plaintiff Has**

10  **not Submitted any Valid Appraisal Report on the Subject Property.**

11

12       There are no legal arguments on this issue. **Plaintiff** or his attorney is not a licensed appraiser

13  and does not qualify to appraise the **Subject Property.**  The comparables to **Subject Property**

14  from them *do not  qualify to* support the argument of "undervalue" of the **Subject Property.**

15  **Plaintiff** never submits a formal appraisal report on the **Subject Property** from a licensed

16  appraiser to the court. The facts found in the accompanying *Statement of Uncontroverted Facts IX*

17  *1-4* show **Plaintiff's** bad faith to harass **Defendant** and delay the bankruptcy proceeding.

18

19  **X.  ISSUE TEN:**

20  **Plaintiff Failed to Demonstrate the Defendants' Intent to Obstruct, Prevent, and Delay**

21  **Plaintiff from Collection of the Judgment Debt. On the Contrary, Plaintiff Attached**

22  **Judgement Lien to the Subject Property Without Any Delay.**

23

24       In *California Code of Civil Procedure §697.340,* it states that "(a) A judgment lien on real

25  property attaches to all interests in real property in the county where the lien is created (whether

26  *present or future, vested or contingent, legal or equitable)* that are subject to enforcement of the

27  money judgment against the judgment debtor... (b) If any interest in real property in the county

28  on which a judgment lien could be created under subdivision (a) is acquired after the judgment

1   lien was created, the judgment lien attaches to such interest at the time it is acquired." (*CCP*

2   *§697.340*).

3

4       As in the case of *Caldwell v. Nelson,*  it is interpreted that "the debtor had retained

5   *beneficial and equitable title* in the property since ... the debtor paid the mortgage, taxes, and

6   insurance on the property." *Caldwell v. Nelson,* 545 B.R. 605 BAP 9th Cir. (2016).

7

8       In *California Civil Code §3439.07(a)*, it states that "[i]n an action for relief against the

9   transfer or obligation ... a creditor may obtain: ...(2) An attachment or other provisional remedy

10  against transferred or other property of the transferee in accordance with the procedures ...

11  available under applicable law." (*California Civil Code §*3439.07(a)).

12

13      In the case of *Iknoian v. Winter,* a California court held that when a judgment is recorded

14  as a lien on a property, the debtor must have interest in that property that belongs to the person

15  who owes money, however, if at that time [of recording a lien,] all title and interest has passed

16  from him to a third person, the creditor gets nothing." (*Iknoian v. Winter, 94 Cal. Spp. 233, 225*

17  *(1928)*).  Similarly, if the debtor only has the title to the property but no real beneficial interest or

18  value in it, the lien of judgment does not attach. (*Riverdale Mining Co. v. Wicks,* 14 Cal. App. 526,

19  536 (1910)).

20

21      After obtaining the judgement from **Judged Case**, **Plaintiff** recorded the abstract of

22  judgement immediately with the Riverside County Recorder on January 10, 2022. At the time, a

23  judgement lien was created and attached to all the real properties which **Defendant(Susan)** had

24  interests (*legal* or *equitable)* in Riverside County. This judgement lien was specifically attached

25  onto the title of the **Subject Property.** At the time, **Defendant(Susan)** held the equitable interest

26  on the title of **Subject Property**, because **Defendant(Susan)** continuously paid property tax,

27  mortgage payment, and property insurance due.

28

1   This action of recording judgement is a remedy set forth in *California Civil Code*

2   *§3439.07(a)(2)* – attachment of a lien on the "transferred property". (*California Civil Code*

3   *§3439.07(a)(2))*. Both avoidance of transferred property and attachment of a lien on the transferred

4   property are reliefs set forth under *California Civil Code §3439.07*(a). Both reliefs had been

5   completed long before this Adversary Complaint was filed.

6

7   **XI.   ISSUE ELEVEN:**

8   **Plaintiff Failed to Demonstrate that Defendants Hid, Concealed, and Kept Plaintiff's Reach**

9   **from Collection of the Judgment Debt Because of No Facts Supporting His Allegations.**

10

11   In *California Civil Code §19,* it defines "constructive notice" as that : "[e]very person who

12   has actual notice of circumstance sufficient to put a prudent person upon inquiry as to a particular

13   fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he

14   or she might have learned that fact." (*California Civil Code §19).*

15

16   A *constructive notice* implies a person is presumed to know a fact because it has been recorded

17   in public records, regardless of whether they have seen it. In a real estate transaction, a deed is

18   recorded in public record. Anyone is deemed to have the notice of the deed. This concept is the

19   principle that once information affecting a specific  property is publicly available it is known by

20   all parties. This means that nobody can claim ignorance of the change of ownership if the deed is

21   properly recorded.

22

23   Therefore, the following documents are *constructive notices* available for **Plaintiff** and other

24   public access as pursuant to *California Civil Code §19*:

25   - *Quitclaim Deed of* **Transfer #1 (Exhibit #1),**

26   - *Quitclaim Deed* of **Transfer #2 (Exhibit #2),**

27   - *Article of Incorporation of* **Global (Exhibit #3).**

28   - *Statement of Information for* **Global (Exhibit #4),**

- *Abstract of Judgement* **(Exhibit #5),**

- *Homestead Declaration* **(Exhibit #6),**

- *Notice of Pendency of Action* **(Exhibit #7).**


All these documents are stored at the county recorder's office or at the California Secretary of State's office and available online for public access. The Judgement Lien had attached to the **Subject Property,** and all other information was made publicly available with no intent on the **Defendants'** part to hide, conceal, or otherwise keep from **Plaintiff's** reach the collection of the **Judgement Debt**.


**XII.    ISSUE TWLEVE:**

**Plaintiff Falsely Claimed that Defendants' Homestead Declaration was Fraudulent Without Providing Any Evidential Facts.**


The homestead exemption applies only when certain requirements are met. These requirements are described in *the California Code of Civil Procedure §704.710* as following:

    (1) The residence must be the principal dwelling of the judgment debtor or his/her spouse.

    (2) The judgment debtor, or his/her spouse, must reside at the dwelling on the date the judgment creditor's lien attached to the dwelling.

    (3) The judgment debtor and/or his/her spouse must reside continually thereafter until the date of the court determination that the dwelling is a homestead.

*(California Code of Civil Procedure §704.710).*


An individual's personal residence vested in the name of a revocable inter vivos (living) trust or other type of title holding arrangement established for the benefit of the homeowner, may also be declared a homestead by anyone who has an interest in the property and resides there. *(Fisch, Spiegler, Ginsburg & Ladner v. Appel,* 10 Ca 4th 1810 (1992)).

**Defendants** moved to **Subject Property** in October 2020 and stayed there as **our** principal residence. This qualified the **Subject Property** under homestead protection automatically against judgement creditors as pursuant to *California Code of Civil Procedure §704.710*. **Defendants** held the equitable interest on the title of **Subject Property** by paying property tax, mortgage, and insurance as well as reside at the **Subject Property** to retain it as our homestead dwelling.

When the Declaration of Homestead recorded on April 21, 2022, Defendant(Susan) had both legal and equitable interests on the title. **Defendants** retain the **Subject Property** as a *homestead* from October 2020 until present date.

## XIII.    ISSUE THIRTEEN:
**Lis Pendens (Notice of Pendency of Action) Recorded because of the Pending Case Should be Expunged.**

Under *California Code of Civil Procedure §405.32,* it states that "the court shall order that the notice be expunged if the court finds that the claimant **[Plaintiff]** has not established by preponderance of the evidence the probable validity of the real property claim. The court shall not order an undertaking to be given as a condition of expunging the notice if the court finds the claimant **[plaintiff]** has not established the probable validity of the real property claim." (*California Code of Civil Procedure §405.32*).

In the case of *Peery v. Superior Court,* the court held that "to avoid expungement of the lis pendens, **[Plaintiff]** must demonstrate by a preponderance of evidence that he has litigated *in good faith.*" (*Peery v. Superior Court,* 29 Cal. 3d 838-847 (1981) ).

**Plaintiff** placed the **Lis Pendens** on the **Subject Property** based on the false claim of "fraudulent transfer" litigation. **Plaintiff** has not established any preponderance of the evidence to

prove his placement of **Lis Pendens** *notice* to be probably valid as pursuant to *California Code of Civil Procedure* as well as *Peery* case.

Also, the **Lis Pendens** on the title of **Subject Property** has caused substantial economic damage to **Defendants**. The recorded notice (**Lis Pendens**) places a cloud on the title of **Subject Property. This** made **Defendant(Susan)** unable to sell **Subject Property** in the good housing market period, from March to October 2022.

Therefore, the **Lis Pendens** should be expunged.

## XIV.   ISSUE FOURTEEN:

**Damage and/or Injury Claimed by Plaintiff are False Because of Lack of Evidentiary Facts to Support his False Claims.**

In the 11 U.S.C. Ap *Rule 7054(b),* provides that the court *may* allow costs to the prevailing party. The bankruptcy court judgement must include a provision awarding the prevailing party "taxable costs". The costs do not include *attorney fees.*

For attorney's fees in adversary proceeding, *Federal Rule of Civil Procedure 54(d)(2)* applies. Under "American Rule", each side to a legal matter must pay their own attorney fees, regardless of who wins the case. Unless the provisions of the statute award the attorney fees, it is not allowed for attorney fees to be claimed. In **Plaintiff's** Adversary Complaint, **Plaintiff** claimed falsely for "costs and *attorneys* in bringing this action".

In the Adversary Complaint**, Plaintiff** claimed for *"damages* according to proof". First**, Plaintiff** failed to mention what "damages" are. Second, **Plaintiff** failed to list how each of "damages" caused or created. Third, **Plaintiff** failed to provide detail for the cause of each of "damages". Fourth,   **Plaintiff** failed to give or estimate the loss on each of "damages" as

compensation. Fifth, **Plaintiff** failed to provide reliefs for each of "damages". Finally, the attorney

fees are not "damages". Without those elements of damages, there is no evidence to "prove" the

claim of "damages" asserted by **Plaintiff.**


Therefore, **Defendants** claim property loss on the **Subject Property** to be $812,000 as

**Defendants** in the accompanying *Declaration* ¶**21.**

## CONCLUSION

1.  For the forgoing reasons, the Court should grant the motion for summary judgment in favor of **Defendants** and against **Plaintiff**. The **Plaintiff's Complaint** for Adversary Proceeding case (Case No. 6:23-ap-01019-RB) should be dismissed.

2.  The undisputed facts establish that the **Defendants/Movant** committed no "wrong" acts against **Plaintiff**. The evidential facts provided by **Plaintiff** fails to indicate anything that would rise to the perpetration of fraud or the violation of a statute.

3.  The court should grant the motion for summary judgment because **Plaintiff** failed to state a claim for relief against **Defendants.**

4.  **Plaintiff** has no facts to support his allegations that the judgment debt is non-dischargeable pursuant to §523(a)(2)(A).

5.  **Plaintiff** has no facts to support his allegations that the judgment debt is non-dischargeable pursuant to §523(a)(6).

6.  The goal of the bankruptcy laws is that: "[i]t gives to the honest but unfortunate debtor…a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." (*Local Loan Co. v. Hunt (1934),* 292 U.S. 234,244).

7.  **Plaintiff,** the Judgment Creditor, holds a judgment debt and did not file a proof of claim with the court before the deadline set by the trustee.

8.  There is no full appraisal of **Subject Property** conducted and submitted as of this date by **Plaintiff** per **Plaintiff**'s claim of undervalued appraisal filed.

9.  The court should order that **Plaintiff** take nothing against **Defendants/Movant** as stated in the **Plaintiff**'s Complaint.

10. The court should order that the Judgement Debt claimed by **Plaintiff** be discharged.

11. The court should order that the **Lis Pendens** recorded in the County be expunged (removed).

12. The court should award **Defendants** for their cost in the Adversary Proceeding case.

**13.** The court should award **Defendants** compensatory damages on property loss as **Defendants** declare in the accompanying *Declaration* at amount of $812,000.

**14.** The court should award **Defendants** for their damages, including punitive and exemplary damages.

**15.** The court should grant **Defendants** other reliefs that the court deems just and proper.

Date: MARCH 5, 2025

Respectfully submitted,

By:


Shu-Chen Susan Wu

And By:


Geogiang Joseph Yue

Defendants, in Pro Per