

FILED & ENTERED

NOV 21 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY hawkinso DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>SHU-CHEN WU, and<br>GEOGIANG JOSEPH YUE,<br><br>              Debtor(s). | CHAPTER 7<br><br>Case No.: 6:22-bk-14173-RB<br>Adv No:   6:23-ap-01019-RB<br><br>**MEMORANDUM OF DECISION**<br>**AFTER TRIAL** |
| EMILIO CERON,<br><br><br>           Plaintiff,<br><br>   v.<br><br>SHU-CHEN WU, and<br>GEOGIANG JOSEPH YUE,<br><br>          Defendant(s). | |

-1-

On September 2, 2025, and September 3, 2025, this Court held a 2-day trial in the above captioned adversary proceeding. Adv. Dkts. 89-90.[1] Plaintiff seeks to have debts alleged in the complaint against Defendants deemed nondischargeable under 11 U.S.C. § 523(a)(2) for actual fraud and under 11 U.S.C. § 523(a)(6) for willful and malicious injury. For the reasons set forth below, the Court finds that Plaintiff has not met its burden on its alleged causes of action and finds in favor of Defendants. This Memorandum of Decision constitutes this Court's findings of fact and conclusions of law under Federal Rule of Procedure 52, made applicable here by Federal Rule of Bankruptcy Procedure 7052.[2]

## I.    Jurisdiction

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334, and Federal Rule of Bankruptcy Procedure ("FRBP") 7001. This matter is a core proceeding under 28 U.S.C. § 157, and venue is proper under 28 U.S.C. § 1409.

## II.    Parties

Attorney Fritz J. Firman represented Plaintiff Emilio Ceron ("Plaintiff") and attorney Richard Sturdevant represented Defendants Shu-Chen Wu and Geogiang Joseph Yue ("Defendants").

## III.    Factual and Procedural Background

As set forth in the parties Joint Pretrial Stipulation,[3] on or about March 17, 2020, Plaintiff entered an escrow to purchase real property from Defendant located at 16747 Catalonia Drive, Riverside, CA ("Catalonia Property"). Adv. Dkt. 24 at 2, ¶3. Subsequently, Plaintiff deposited $25,000 in escrow funds ("Escrow Funds") into an account with a third party, Pure Logic Escrow ("Pure Logic"). Adv. Dkt. 24 at 2, ¶13.

Plaintiff then withdrew from escrow and properly cancelled the escrow for the purchase of the Catalonia Property. Adv. Dkt. 24 at 2, ¶5. However, Defendants refused to release

---

[1] The Court may take judicial notice of its files and records under Federal Rule of Evidence 201.
[2] To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.
[3] On January 9, 2024, parties filed a Joint Pretrial Stipulation. Adv. Dkt. 24.

Plaintiff's Escrow Funds, and the Escrow Funds remained with Pure Logic Escrow. Adv. Dkt. 24 at 2 ¶6.

*State Court Proceeding*

On July 20, 2020, Plaintiff sued Defendants for recovery of Plaintiff's Escrow Funds. Adv. Dkt. 24 at 2, ¶7; Plaintiff's Ex. 2; Defendants' Ex. B. [4] Plaintiff filed an action for breach of contract in Riverside Superior Court, case no. RIC 2003142, against Defendants to recover Escrow Funds. Adv. Dkt. 24 at 2, ¶9-10.

On June 8, 2021, the parties underwent mediation, but the matter remained unresolved and proceeded to trial. Adv. Dkt. 24 at 3, ¶16.

On June 29, 2021, Defendant Shu-Chen Wu formed Global Investments Inc. ("Global Investments") with the California Secretary of State and was the sole owner, director, and officer of Global Investments. Adv. Dkt. 24 at 3, ¶17-19. Defendants' Exs. D & E.

On August 6, 2021, Defendant Shu-Chen Wu deeded a property located at 7907 Horizon View Drive, Riverside, CA ("Horizon View Property" or "the Property") to Global Investments Inc. Adv. Dkt. 24 at 3, ¶19. Defendants' deed transferring the Horizon View Property from Defendants to Global Investments reflected no consideration or documentary tax. Adv. Dkt. 24 at ¶20; Plaintiff's Ex. 3; Defendants' Ex. C.

On October 20, 2021, the state court conducted a trial, and Defendants appeared in pro per. Adv. Dkt. 24 at 2, ¶10. Pure Logic then deposited disputed Escrow Funds with the state court. Adv. Dkt. 24 at 2, ¶13. On November 12, 2021, the state court rendered judgment for breach of contract in the amount of $30,088.02 in favor of Plaintiff. See Adv. Dkt. 1, Ex. A; Defendants' Ex. A.

On February 1, 2022, the state court entered an amended judgment in favor of Plaintiff for $78,987.52 ("State Court Judgment" or "Judgment") to include attorney's fees. Defendants' Ex. B; Adv. Dkt. 24 at 2, ¶12. The state court then released about $25,000 in Escrow Funds—

---

[4] Plaintiff's trial exhibits are referenced as "Plaintiff's Ex" or "Plaintiff's Exs." Defendants' trial exhibits are referenced as "Defendants' Ex" or "Defendants' Exs."

funds interplead by Pure Logic—to Plaintiff in partial satisfaction of the State Court Judgment against Defendants. Adv. Dkt. 24 at 2, ¶13. Defendants did not appeal the State Court Judgment and said Judgment is final and bears interest at legal rate of 10% per annum. Adv. Dkt. 24 at 3, ¶21, 23.

On March 9, 2022, Plaintiff filed a complaint in state court against Defendants alleging Defendants engaged in a fraudulent conveyance. Plaintiff's Ex. 6.

On April 19, 2022, Defendant Shu-Chen Wu, acting on behalf of Global Investments, deeded the Property from Global Investments back to Defendants. Defendants' Ex. K.

*Bankruptcy Proceeding*

On November 2, 2022, Defendants filed for bankruptcy, case no. 6:22-bk-14173. *See* Bk. Dkt. 1. As of the petition date, the State Court Judgment against Defendants totaled $60,858.00. Adv. Dkt. 24 at 3, ¶15.

*Adversary Proceeding*

On February 6, 2023, Plaintiff filed the instant adversary proceeding, case number 6:23-ap-01019-RB, against Defendants. Adv. Dkt. 1.Plaintiff is seeking debts alleged in complaint to be deemed nondischargeable for actual fraud under 11 U.S.C. § 523(a)(2), and for willful and malicious injury under 11 U.S.C. § 523(a)(6). *See* Adv. Dkt. 1.

On March 9, 2023, Defendants filed a Motion to Dismiss. Adv. Dkt. 5. On April 18, 2023, Plaintiff filed an Opposition to the Motion to Dismiss. Adv. Dkt. 8. On June 27, 2023, the Court denied the Defendant's Motion to Dismiss and set the deadline of July 27, 2023, for Defendants to file an Answer. Adv. Dkt. 16. On July 27, 2023, Defendants filed an Answer to Complaint. Adv. Dkt. 20.

On January 9, 2024, parties filed a pre-trial stipulation. Adv. Dkt. 24. On October 1, 2024, the Court entered an Order Denying the Defendant's Motion to Dismiss. Adv. Dkt. 42. On March 6, 2025, Defendants filed a Motion for Summary Judgment. Adv. Dkt. 60. On, March 24, 2025, the Court denied Defendant's Motion for Summary Judgment. Adv. Dkt. 65.

On August 19, 2025, Plaintiff filed a trial brief. Adv. Dkt. 85. On August 26, 2025, Defendants filed a trial brief. Adv. Dkt. 87.

At trial, Plaintiff's counsel called and questioned Plaintiff Emilio Ceron, Defendant Shu-Chen Wu, Defendant Geogiang Joseph Yue, and Plaintiff's state court counsel Hallie Hannah. Defendant's counsel called and questioned Defendants Geogiang Joseph Yue and Shu-Chen Wu. All witnesses appeared in person and testified under oath. Counsel for both Plaintiff and Defendants cross-examined or had the opportunity to cross-examine the witnesses under oath. Both counsels also conducted or had the opportunity to conduct re-direct examinations of the witnesses under oath.

The Court admitted the following exhibits offered into evidence by Plaintiff: Exhibits 1-8. September 3 Trial, 2:00:00 –2:03:40. The Court also admitted the following the following exhibits into evidence by Defendants: Exhibits A-M and Adv. Dkt. 92 (for impeachment purposes). September 2 Trial, 1:35:00 - 1:36:15; September 3 Trial, 2:00:00 –2:03:40; September 3 Trial, 3:12:50-3:13:30.

At trial, Plaintiff alleged that Defendants' transfer of the Horizon View Property to Global Investments occurred on the eve of state court trial, for no consideration, and Defendants retained control of the property after the transfer. September 2 Trial, 1:14:15-1:17:30; September 3 Trial, 2:50:45-2:51:10.

Moreover, Plaintiff asserted that the transfer involved substantially all of Defendant's assets at the time. September 2 Trial, 2:07:06-2:08:00. According to Plaintiff, these circumstances show that Defendants transferred the Horizon View Property with the actual intent to hinder, delay, or defraud Plaintiff from enforcing its Judgment and that these actions should render the debts alleged under the complaint nondischargeable for actual fraud under Section 523(a)(2) and willful malicious injury under Section 523(a)(6). September 2 Trial, 1:17:45-1:18:25; September 3 Trial, 2:57:37-3:02:43.

When Plaintiff questioned Defendant about the transfer of the Property, Defendants testified they had been in the "house flipping" business for over 10 years, and that placing

properties into corporations was a common business practice for them.[5] September 3 Trial, 1:30:00 –1:31:30.

Specifically, Defendants stated that in the last 30 years, they opened 5-6 corporations, and in the last 10 years, flipped 5 to 10 houses. September 2 Trial, 2:37:10-2:38:05. Defendants further stated that Defendant Geogiang Joseph-Yue did the house improvements, and Defendant Shu-Chen Wu purchased and sold the houses. September 3 Trial, 1:30:00 –1:31:30.

Defendant Geogiang Joseph-Yue directly testified that he did renovations on the Horizon View Property shortly after the Property deeded from themselves to Global Investments, and that he finished those renovations about 6 months after. September 3 Trial, 1:33:30-1:34:10.

Defendants also introduced evidence demonstrating they had made similar property transfers in the past where they had placed real property into corporations to facilitate renovations and sales—transfers which predated the transfer of the Horizon View Property to Global Investments. Defendants' Exs. C, I, J, K. Notably, Defendants also presented evidence that the Horizon Property had once been transferred in the past to another corporation with the name of Yuchen Investment Inc. Defendants' Exs. I, J; September 3 Trial, 2:10:05-2:12:50. Defendant Shu-Chen Wu stated that they had done this prior transfer of the Horizon View Property to facilitate a sale, but did not receive offers they were looking for, so Defendants transferred ownership back to themselves personally. September 3 Trial, 2:12:50-2:13:20. As to *why* they transferred the property into corporations, Defendants testified that doing renovations and conducting sale through a corporate entity offered them tax and business advantages. September 3 Trial, 1:57:45-1:58:23; September 3 Trial, 2:13:30-2:14:00.

Furthermore, Defendants testified that after transferring the Property to Global Investments, they listed it for sale. September 3 Trial, 2:07:45-2:08:30. However, Defendants stated that they were unable to obtain their desired price, and that the pending fraudulent conveyance action created a cloud on the Property's title. September 3 Trial, 2:08:30-2:08:50.

---

[5] Defendants describe their "house flipping" business as buying, renovating, and selling houses for profit. September 3 Trial, 1:30:00-1:31:30.

Because of these issues, Defendants stated they could no longer sell the Horizon View Property, so Defendants transferred the Property back to themselves on April 19, 2022. Sept 3 Trial, 2:08:30-2:08-50. That transfer restored Property to Defendants' personal ownership, which placed it within the reach of Plaintiff and its State Court Judgment until Defendants filed for bankruptcy on November 2, 2022. See Adv. Dkt. 24 at 3, ¶15; September 3 Trial, 1:26:00-1:26:45.

In addition, Defendants explained before this Court that they believed their position was correct in the state court trial. September 2 Trial, 2:31:30-2:38:05. Defendants stated that they did not believe the state court judge ruled correctly because they felt that Plaintiff did not properly cancel the escrow contract. September 2 Trial, 2:31:30-2:38:05. Moreover, Defendants testified that they did not appeal the state court decision because they lacked the financial resources to retain counsel. September 2 Trial, 2:31:30-2:38:05.

Defendants also testified that they believed the initial transfer to Global Investments would not hinder Plaintiff's ability to record a judgment lien. September 3 Trial, 2:10:15-2:17:00. Defendants explained that because they had full ownership and control over both the Horizon View Property and Global Investments, they believed Plaintiff could enforce its Judgment lien on either the corporation or the Property. September 3 Trial, 2:10:15-2:16:25. Defendant Shu-Chen Wu also testified that they did not consult a bankruptcy attorney until October 2022, and that Defendants' main concern for filing bankruptcy was high interest debt from other creditors, not from Plaintiff's State Court Judgment. September 2 Trial, 1:46:15-1:47:45, September 3 Trial, 2:26:45-2:28:15.

Lastly, Defendants testified that they met Plaintiff only twice, once during the sale process and again at the state court trial. September 3 Trial, 1:34:12-1:36:15; September 3 Trial, 2:18:02-2:18:20. Specifically, both Defendants ever physically attacking or injuring Plaintiff, and each stated that they had never caused damage to his property. September 3 Trial, 1:36:20-1:36:40.

#### IV.    Exceptions to Discharge

Under 11 U.S.C. § 523, exceptions to discharge are construed narrowly and in favor of debtors to effectuate the fresh start policy of the bankruptcy code. *See In re Klapp*, 706 F. 2d. 998, 999 (9th Cir. 1983); *In re Lochrie*, 78 B.R. 257, 259 (9th Cir. BAP 1987). Although the statutory provisions governing dischargeability reflect a congressional decision to exclude from discharge certain categories of debts, a central purpose of the Bankruptcy Code is to provide a procedure by which certain insolvent debtors can enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner*, 498 U.S. 279, 286 (1991) quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, (1934).

Simply put, the bankruptcy system seeks to strike a balance between granting debtors a fresh start and preventing abuse. *In re Sijan*, 611 B.R. 850, 854 (Bankr. S.D. Ohio 2020). However, it is well established that the primary goal of bankruptcy is to provide the "honest but unfortunate debtor" with a fresh start. *Moore v. Couture* (*In re Couture*), Nos. 12-61434-7, 13-00019-BPH, 2020 Bankr. LEXIS 3389 at *26 (Bankr. D. Mont. Dec. 4, 2020).

Moreover, a creditor has the burden of proof when seeking an exception to discharge under § 523(a), which must be proven by a preponderance of the evidence. *Grogan*, 498 U.S. at 286-290 (1991). As such, the discharge exceptions are construed narrowly in favor of the debtor and against the creditor. *Symantex Corp. v. Mann* (*In re Mann*), 410 B.R. 43, 48 (Bankr. C.D. Cal. 2009).

#### A.    First Cause of Action for Actual Fraud under 11 U.S.C. § 523(a)(2)(A)

The first issue before this Court concerns dischargeability under § 523(a)(2)(A), which sets forth that:

A discharge…of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or ***actual fraud***, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A) (*emphasis added*).

Most dischargeability litigation under § 523(a)(2)(A) involves fraud claims established from misrepresentations. Courts are far less frequently asked to determine whether a debtor's fraudulent transfer can fall within the statute's scope. In *Husky*, the Supreme Court ruled that the term "actual fraud" under § 523(a)(2)(A) can encompass fraudulent conveyances or fraudulent transfers under appliable nonbankruptcy law. *Husky International Electronics, Inc. v. Ritz* 578 U.S. 356, 359 (2016); *see also First Tr. v. Frazier* (*In re Frazier*), 655 B.R. 1, 30 (Bankr. E.D. Cal. 2023); *Kelly v. Andersen* (*In re Andersen*), Nos. 20-20978-E-7, 20-2111, RK-1, 2020 Bankr. LEXIS 3031, at *26 (Bankr. E.D. Cal. Oct. 28, 2020).

The *Husky* Court further explained that recognizing fraudulent conveyances as "actual fraud" does not eliminate the "obtained by" requirement in § 523(a)(2)(A), though it noted such situations may be uncommon. *Husky*, 578 U.S. at 365 (2016). Instead, the Court held that the "obtained by" requirement is met when a debtor, acting with fraudulent intent, receives assets through a fraudulent transfer meant to hinder, delay, or defraud creditors. *Id*. Then, "if that recipient later files for bankruptcy, any debts 'traceable to' the fraudulent conveyance will be nondischargeable under § 523(a)(2)(A)." *Id*. (citations omitted).

When determining what constitutes a fraudulent conveyance that could fall within the scope of a debt obtained by "actual fraud" under § 523(a)(2)(A), the *Husky* Court looked to state law. *Id*. at 358. Bankruptcy courts routinely look to state law to define the nature of conduct giving rise to a debt. As the Supreme Court explained, "[p]roperty interests are created and defined by state law," and creditors' rights "arise in the first instance from the underlying substantive law creating a debtor's obligation." *Butner v. United States* 440 U.S. 48, 55 (1979); *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 450 (2007). Accordingly, while federal bankruptcy law governs whether certain types of debts are dischargeable, state law determines the existence and character of the debt.

Here, Plaintiff alleges Defendants engaged in a fraudulent transfer when Defendants transferred the Horizon View Property from themselves to Global Investments. Plaintiff contends

such transfer constitutes "actual fraud" under § 523(a)(2)(A) as encompassed by the Supreme Court in *Husky. Husky*, 578 U.S. at 359; *See* Adv. Dkt. 85 at 9-10. Finally, Plaintiff argues that Defendants complied with the "obtained by" requirement in *Husky* because Defendants "obtained" the debts through the alleged fraudulent transfers. *See* Adv. Dkt. 85 at 9-10. Thus, Plaintiff contends Defendants' debts should be deemed nondischargeable under § 523(a)(2)(A) for actual fraud. *See* Adv. Dkt. 85 at 9-11. Plaintiff further contends that the second transfer of the Property from Global Investments to themselves also indicates fraudulent intent. Adv. Dkt. 85 at 12, ¶3-8.

To determine whether Defendants' transfer of the Property constituted a fraudulent transfer that can be deemed nondischargeable under § 523(a)(2)(A) for actual fraud, the Court will analyze whether Defendants' transfer was fraudulent under California law.[6]

*Fraudulent Transfer Under California Law*

Under California law, a fraudulent transfer occurs when a "transfer by the debtor of property to a third person [is] undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." *Kirkeby v. Superior Court*, 33 Cal. 4th 642, 648 (2004) (quoting *Yaesu Electronics Corp. v. Tamura* (1994)); *see also* Cal. Civ. Code § 3439.04(a)(1).[7] Accordingly, a fraudulent transfer requires:

(1) a transfer, and

(2) intent to prevent a creditor from reaching the transferred property.

*Kirkeby*, 33 Cal. 4th at 648.

---

[6] Plaintiff's trial brief relies on *Acequia, Inc. v. Clinton* (*In re Acequia, Inc.*), 34 F.3d 800 (9th Cir. 1994), which addresses a trustee's avoidance powers under 11 U.S.C. § 548. Adv. Dkt. 85 at 11, ¶7-18. *Acequia* and § 548, however, deal with a bankruptcy trustee seeking to recover property back into the estate. *Id.* at 807. Here, the Horizon View Property was already property of the estate, and the creditor is seeking to except a debt from discharge. These are two different legal standards, and § 548 is not applicable in this context.

[7] The relevant California law governing fraudulent conveyances is the California Uniform Voidable Transactions Act ("UVTA"), Cal. Civ. Code § 3439, et seq. "(a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows: (1) With actual intent to hinder, delay, or defraud any creditor of the debtor." *Id.* at 3439.04(a).

Therefore, the Court looks to see if (1) Defendants effectuated a transfer, and if Defendants committed a transfer, (2) whether Defendants transferred the Property with actual intent to hinder, delay, or defraud Plaintiff and its Judgment.

i)    *Defendants' Transfer of Horizon View Property was A Transfer Under California Law*

Under California law, transfers are defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset[.]" Cal. Civ. Code § 3439.01(m).

Here, Parties do not dispute that a transfer of the Horizon View Property occurred. *See* Adv. Dkt. 24.

Although fraudulent transfers are typically between a debtor and a third party, under California law, a transfer "may include situations in which the debtor 'parts' with property without alienating ownership or possession." *Nagel v. Westen*, 59 Cal. App. 5th 740, 750 (2021). In *Nagel*, a debtor transferred property into other entities but remained in control and possession of said property through those entities. Defendants' Ex. D. Despite the lack of a transfer to a "third party," the court found that the debtor committed a transfer under California law. *Id.* at 748-750.[8]

Like *Nagel*, Defendants transferred the Property into Global Investments but still maintained possession and control through their ownership of Global Investments. As such, this constitutes a transfer. Thus, this Court finds that Defendants transferred the Horizon View Property under California law.

---

[8] Additionally, in California, a corporation is considered a separate legal person, distinct from its shareholders or officers. *Say & Say, Inc. v. Ebershoff*, 20 Cal. App. 4th 1759, 1769 (1993).

ii)    *Plaintiff Fails to Establish Defendants Possessed Actual Intent to Hinder, Delay, or Defraud Creditors*

a.    *Legal Standard for Actual Intent*

Whether a debtor acted with actual intent to hinder, delay, or defraud creditors is a question of fact, and the plaintiff bears the burden of proof by a preponderance of the evidence. Cal. Civ. Code § 3439.04(c); *Annod Corp. v. Hamilton & Samuels*, 100 Cal. App. 4th 1286, 1294 (2002). The trier of fact must determine if grantor's title is but "a mere cloak under which is hidden the hideous skeleton of deceit." *Cortez v. Vogt*, 52 Cal.App.4th 917, 936 (1997).

However, "where the circumstances of the transfer comport equally with the theory of honesty and fair dealing, fraud will not be found," and in such cases, the solvency of the transferor is immaterial. *T.W.M. Homes, Inc. v. Atherwood Realty & Inv. Co.*, 214 Cal. App. 2d 826, 844 (1963) (quoting *Aggregates Associated, Inc. v. Packwood*, 58 Cal. 2d 580, 588 (1962), and *Fross v. Wotton*, 3 Cal. 2d 384, 388 (1935)).[9]

Under California law, several "badges of fraud" help the trier of fact determine whether a debtor has acted with fraudulent intent. *See Nagel*, 59 Cal. App. 5th at 748 (as modified on denial of reh'g (Feb. 1, 2021)); Cal. Civ. Code § 3439.04(b). Among these badges, courts often look to whether:

(1) debtor made the transfer to an insider;

(2) debtor retained possession or control of the property after the transfer;

(3) debtor had been sued before making the transfer;

(4) the debtor removed or concealed assets;

(5) value of consideration received by debtor was reasonably equivalent to value of asset transferred; and

(6) transfer occurred shortly before or shortly after a substantial debt was incurred.

*Aghaian v. Minassian*, 59 Cal. App. 5th 447, 456 (2020).

---

[9] *See also In re Medina*, 619 B.R. 236, 241-248 (B.A.P. 9th Cir. 2020), aff'd, No. 20-60045, 2021 WL 3214757 (9th Cir. July 29, 2021) (holding that under California's UVTA, insolvency and actual harm are not elements of an actual-intent fraudulent transfer claim under § 3439.04(a)(1)).

Importantly, these badges of fraud are not conclusive. No minimum or maximum number of factors is required, and even the presence of several badges does not compel a finding of actual intent. *See Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 834 (2005). Each case turns on its facts. *See Annod* 100 Cal. App. 4th at 1294.

### b.  Analysis

Plaintiff points out that Defendants' transfer of the Horizon View Property to Global Investments occurred on the eve of state court trial, for no consideration, and Defendants retained control of the property after the transfer. Adv. Dkt. 85 at 9-11. September 2 Trial, 1:14:15-1:17:30; September 3 Trial, 2:50:45-2:51:10. Moreover, Plaintiff contends that the transfer involved substantially all of Defendant's assets at the time. Adv. Dkt 85 at 9-11; September 2 Trial, 2:07:06-2:08:00. Plaintiff also asserts that Defendants knew they were going to lose at trial and transferred the Property to conceal their primary asset from Plaintiff. Adv. Dkt. 85 at 9. According to Plaintiff, these circumstances show that Defendants transferred the Horizon View Property with the actual intent to hinder, delay, or defraud Plaintiff from enforcing its Judgment. Adv. Dkt. 85 at 9.

As noted above, the badges of fraud are not determinative and are only meant to assist the factfinder in coming to a determination of actual intent. *See Annod*, 100 Cal. App. 4th at 1298. While Defendants' conduct indicates some badges of fraud, the Court finds that Defendants presented reasonable explanations for their transfers as more fully set forth below.

### 1.  Transferring of Properties to a Corporation Was Common Business Practice

Defendants testified they had been in the "house flipping" business for over 10 years, and that placing properties into corporations was a common business practice for them.[10] September 3 Trial, 1:30:00 –1:31:30.

Specifically, Defendants stated that in the last 30 years, they opened 5-6 corporations, and in the last 10 years, flipped 5 to 10 houses. September 2 Trial, 2:37:10-2:38:05. Defendants

---

[10] Defendants describe their "house flipping" business as buying, renovating, and selling houses for profit. September 3 Trial, 1:30:00-1:31:30.

1  described that Defendant Geogiang Joseph Yue did the house improvements, and Defendant

2  Shu-Chen Wu purchased and sold the houses. September 3 Trial, 1:30:00 –1:31:30.

3      Defendant Geogiang Joseph Yue also testified that he did renovations on the Horizon

4  View Property shortly after the property deeded from themselves to Global, and that he finished

5  those renovations about 6 months after. September 3 Trial, 1:33:30-1:34:10.

6      Defendants also introduced evidence demonstrating they had made similar property

7  transfers in the past where they had placed real property into corporations to facilitate

8  renovations and sales—transfers which predated the transfer of the Horizon View Property to

9  Global Investments. Defendants' Exs. C, I, J, K. Notably, Defendants presented evidence that the

10  Horizon Property had once been transferred in the past to another corporation with the name of

11  Yuchen Investment Inc. Defendants Exs. I, J; September 3 Trial, 2:10:05-2:12:50. Defendant

12  Shu-Chen Wu stated that they had done this prior transfer of the Horizon View Property to

13  facilitate a sale, but did not receive offers they were looking for, so Defendants transferred

14  ownership back to themselves personally. September 3 Trial, 2:12:50-2:13:20. As to *why* they

15  transferred the property into corporations, Defendants testified that doing renovations and

16  conducting sale through a corporate entity offered them tax and business advantages. September

17  3 Trial, 1:57:45-1:58:23; September 3 Trial, 2:13:30-2:14:00. These previous transfers support

18  Defendants' assertion that transferring the Property was a consistent business practice for

19  Defendants.

20      Furthermore, Defendants testified that after transferring the Property to Global

21  Investments, they listed it for sale. September 3 Trial, 2:07:45-2:08:30. However, Defendants

22  stated that they were unable to obtain their desired price, and that the pending fraudulent

23  conveyance action created a cloud on the Property's title. September 3 Trial, 2:08:30-2:08:50.

24  Because of these issues, Defendants stated they could no longer sell the Horizon View Property,

25  so Defendants transferred the Property back to themselves on April 19, 2022. Defendants' Ex. K;

26  Sept 3 Trial, 2:08:30-2:08-50. That transfer restored Property to Defendants' personal ownership,

27

which placed it within the reach of Plaintiff and its State Court Judgment until Defendants filed for bankruptcy on November 2, 2022. Defendants' Ex. K; September 3 Trial, 1:26:00-1:26:45.

The statements and actions above weigh against a finding of actual intent to hinder, delay, or defraud. Moreover, the Court found Defendants' testimony credible and consistent with prior business practices. Rather than continuing to conceal their asset, Defendants transferred the Property back to themselves because they could not sell the Property due to the cloud on Property's title.

Defendants evidence and testimony at trial support their assertion that transferring properties into corporations was a common business practice for them, not a one-time maneuver to evade Plaintiff's potential Judgment.

### 2. Eve of Trial

Plaintiff asserts Defendants transferred the Horizon View Property because they *knew* they were going to lose the state court trial. Adv. Dkt. 85 at 9, ¶20-23. However, Defendants explained that they believed their position was correct in the state court trial. September 2 Trial, 2:31:30-2:38:05. Defendants detailed that they did not believe the state court judge ruled correctly because they felt that Plaintiff did not properly cancel the escrow contract. September 2 Trial, 2:31:30-2:38:05. Moreover, Defendants testified that they did not appeal the state court decision because they lacked the financial resources to retain counsel. September 2 Trial, 2:31:30-2:38:05.

Thus, Defendants' testimony indicate they did not expect to lose at state court or anticipate a judgment being entered against them. Consequently, Plaintiff's assertion that Defendants transferred the Horizon View Property in preparation for an expected loss is unsupported by the evidence. The Court found Defendants' testimony credible, and it supports Defendants' position that transferring the Horizon View Property was part of their ordinary business practice.

### 3. Avoiding Collection Efforts

Plaintiff further contends Defendants transferred the Property with the specific intent of avoiding Plaintiff's Judgment. Adv. Dkt. 85 at 9, ¶20-22. However, Defendants testified that they believed the initial transfer to Global Investments would not hinder Plaintiff's ability to record a judgment lien. *See* Adv. Dkt. 87 at 7, ¶2-5; September 3 Trial, 2:10:15-2:17:00. Defendants explained that because they had full ownership and control over both the Horizon View Property and Global Investments, they believed Plaintiff could enforce its Judgment lien on either the corporation or the Property. September 3 Trial, 2:10:15-2:16:25.

The Court finds Defendants' testimony credible.

Defendants' explanation is further supported by the fact that once Defendants were unable to sell the Property, they transferred it out of the corporation, which meant it was within the reach of Plaintiff and the Judgment. Taken together, the evidence supports the conclusion that Defendants did not transfer the Horizon Property with actual intent to hinder, delay, or defraud Plaintiff.

### 4. Second Transfer of The Horizon View Property

Last, the Court examines the nature of Defendants' second transfer involving the Horizon View Property. Defendants transferred the Property from Global Investments back to themselves on April 19, 2022. Defendants' Ex. K.

Plaintiff contends Defendants transferred the Property from Global Investments back to themselves after consulting a bankruptcy attorney and being advised about the benefits of the homestead exemption, where they could rid themselves of Plaintiff's Judgment through the process. Adv. Dkt. 85 at 12, ¶3-8.

However, Plaintiff did not present evidence to support this assertion.

Defendant Shu-Chen Wu testified that they did not consult a bankruptcy attorney until October 2022, and that Defendants' main concern was about the high interest debt from other creditors, not from Plaintiff's State Court Judgment. September 2 Trial, 1:46:15-1:47:45, September 3 Trial, 2:26:45-2:28:15.

Also, Defendants' assertion that they had not consulted a bankruptcy attorney prior to transferring the property from Global Investments to themselves is supported by Defendants' Statement of Financial Affairs,[11] which indicates Defendants first contacted a bankruptcy attorney three (3) days before Defendants filed for bankruptcy on October 31, 2022. *See* Bk. Dkt. No. 11. However, the transfer of the Property from Global Investments to Defendants occurred over six (6) months earlier on April 19, 2022. Defendants Ex. K.

Defendants also testified that broader financial pressures pushed Defendants into bankruptcy, such as Defendant Geogiang Joseph Yue getting cancer and not being able to work. September 2 Trial, 1:46:15-1:47:45, September 3 Trial, 1:47:50-1:49:20, 2:24:14-2:27:20.

Here, Defendants' bankruptcy filing appears to be from pressures concerning Defendant Yue's health conditions, as well as their overall financial situation that also included other higher interest debt.

After careful consideration of all the available evidence, the Court finds Defendant's testimony credible. The Court finds that Defendants' actions were more consistent with financial distress, illness, and failed business efforts rather than an intent to hinder or defraud Plaintiff. While certain circumstances from the timing of the transfer may appear suspicious, Defendants have provided a reasonable explanation for the transfers, and suspicion alone does not satisfy Plaintiff's burden of proving actual fraudulent intent by a preponderance of the evidence. *Aguilar v. Atl. Richfield Co.*, 25 Cal. 4th 826, 864 (2001) ("Speculation, however, is not evidence.").

Thus, the Court finds Plaintiff has not met the burden of demonstrating by a preponderance of the evidence that Defendants possessed fraudulent intent to hinder or delay Plaintiff's collection efforts. Accordingly, the Court finds that Plaintiff has not demonstrated that Defendant's actions constituted a fraudulent conveyance.

c.    *Husky and Actual Fraud Under 11 U.S.C. § 523(a)(2)(A)*

Turning to the nature of the dischargeability of Defendants' debt, the *Husky* Court explained that actual fraud can encompasses other forms of fraud, such as a ***fraudulent conveyance***, under §

---

[11] Bankruptcy Case No. 6:22-bk-14173-RB.

523(a)(2)(A). *Husky*, 578 U.S. at 359. However, this Court finds that after careful examination of facts and admissible evidence, Plaintiff has not met their burden of demonstrating Defendant's transfer of the Horizon View Property was a fraudulent conveyance that is encompassed as a debt obtained by "actual fraud" under § 523(a)(2)(A).

Plaintiff cites *DZ Bank AG Deutsche Zentral-Genossenschaft Bank v. Meyer*, 869 F.3d 839 (9th Cir. 2017), to argue that the Ninth Circuit held that a debt is nondischargeable when a debtor causes a company to fraudulently transfer assets. *See* Adv. Dkt. 85 at 10, ¶2-11. However, the facts in this case are distinguishable from the facts in *DZ Bank*. In *DZ Bank*, Plaintiff had proven at the bankruptcy court that a fraudulent transfer had occurred under the Washington Uniform Fraudulent Transfer Act. *DZ Bank*, 869 F.3d at 842. Here, Plaintiff has not proven that a fraudulent conveyance has occurred in any proceeding.

Here, Plaintiff must prove by a preponderance of the evidence that the Property was not only transferred, but that said transfer was done with an intent to hinder, delay, or defraud.[12] Although the Court finds that Defendants transferred the Property, Plaintiff has failed to meet its burden of demonstrating Defendants transferred said Property with actual intent to hinder, delay, or defraud. Accordingly, Plaintiff has not demonstrated that Defendants' actions constituted a fraudulent conveyance that can be encompassed under § 523(a)(2)(A) as a debt obtained by actual fraud. Thus, the Court finds that Plaintiff has not met the burden of proof to support claim for relief under § 523(a)(2)(A) for actual fraud.

**B. Second Cause of Action for Willful & Malicious Injury Under 11 U.S.C. § 523(a)(6)**

The second cause of action Plaintiff alleged was for willful and malicious injury under 11 U.S.C. § 523(a)(6).

To prevail on a claim under § 523(a)(6), a creditor must show three elements: (1) willful conduct; (2) malice; and (3) causation. *See In re Butcher*, 200 B.R. 675, 680 (Bankr. C.D. Cal. 1996) (quoting *In re Apte*, 180 B.R. 223, 230 (B.A.P. 9th Cir. 1995); *see also In re Barboza*, 545

---

[12] Cal. Civ. Code § 3439.04(a), (c).

F.3d 702, 706 (9th Cir. 2008) (holding that malicious injury requirement is separate from willful

injury requirement); *Ormsby v. First American Title Company of Nevada*, 591 F.3d 1199, 1206

(9th Cir. 2010) (holding that "willful" and "malicious" are both required elements to establish

nondischargeability under § 523(a)(6)).

A willful and malicious injury under this provision requires proof of a "deliberate or

intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v.*

*Geiger*, 523 U.S. 57, 61 (1998).

      i.    *Willful*

The first inquiry is whether there was a willful injury, which must be one that is

deliberate or intentional. *See Kawaauhau v. Geiger*, 523 U.S. at 61-62.

An injury is willful when "the debtor subjectively intended to cause injury to the creditor,

or the debtor subjectively believed that the injury was substantially certain to occur to the

creditor as a result of her actions." *In re Chunchai Yu*, BAP No. CC–16–1045–KuFD, 2016 WL

4261655, at *3 (B.A.P. 9th Cir. Aug. 11, 2016); *see also In re Ormsby*, 591 F.3d at 1207 (9th

Cir. 2010) ("The [d]ebtor is charged with the knowledge of the natural consequences of his

actions."); *Bankers Healthcare Grp., LLC v. Moss (In re Moss)*, 598 B.R. 508, 518 (Bankr. N.D.

Ga. 2019) ("For a failure to pay loans, the debtor must have 'acted with a specific intent to cause

economic injury, or knew injury was substantially certain to result, from his failing to remit

payment on the subject loans,' for § 523(a)(6) to be indicated.") (citations omitted). If the act

was intentional and the debtor knew that it would necessarily cause injury, "willful" intent does

not require that the debtor has had the specific intent to injure the creditor. *In re Jercich,* 238

F.3d 1202, 1207 (9th Cir. 2001). "Willful" means "voluntary" or "intentional." *Kawaauhau*, 523

U.S. at 61-62 (citations omitted).

In the 9th Circuit, the intent required to be considered "willful" is either the subjective

intent of the actor to cause harm or the subjective knowledge of the actor that harm is

substantially certain to occur. *Carillo v. Su (In Re Su)*, 290 F.3d 1140, 1144-1145 (9th Cir.

2002). To demonstrate debtor's conduct is willful requires proof that debtor deliberately or

intentionally injured creditor or creditor's property, and that in doing so, debtor intended the consequences of his act, not just the act itself. *In re Geiger*, 523 U.S. at 60-61.

### ii.    Malicious

Second, there must be an inquiry about whether Debtor's conduct was "malicious." To constitute malicious conduct, the required elements are:

1)    A wrongful act;

2)    Done intentionally;

3)    Which necessarily causes injury; and

4)    Without just cause and excuse.

*Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1106 (9th Cir. 2005).

For conduct to be malicious, the creditor must prove the debtor intentionally committed a wrongful act that caused injury without just cause or excuse. *In re Geiger*, 523 U.S. 57 at 60-61. This definition "does not require a showing of biblical malice, i.e., personal hatred, spite, or ill will." *In re Bammer*, 131 F.3d 788, 791 (9th Cir. 1997). The Supreme Court held that "nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau,* 523 U.S. at 61 (citations omitted). It is important to note that § 523(a)(6) requires the creditor to prove debtor's conduct in causing the injuries was both willful and malicious. *Barboza v. New Form, Inc. (In re Barboza),* 545 F.3d 702, 711 (9th Cir. 2008) (requiring application of a separate analysis for each prong of "willful" and "malicious").

### iii.    Tortious Conduct Required in Breach of Contract

Additionally, an intentional breach of contract cannot give rise to nondischargeability under § 523(a)(6) unless it is accompanied by conduct that constitutes a tort under state law. *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008).

Here, Plaintiff's underlying State Court Judgment stems from a breach of contract. Plaintiff's Exs. 1, 2; Defendants' Ex. F. Although Plaintiff relies on the Court's finding of a fraudulent transfer as the tortious conduct needed to satisfy a claim for relief under § 523(a)(6),

1  the Court, as stated above, does not find that Plaintiff has met their burden in demonstrating

2  Defendants' conduct constituted a fraudulent transfer.

3        Moreover, Plaintiff's reliance on *Murray v. Bammer (In re Bammer),* 131 F.3d 788 (9th

4  Cir. 1997) and *Maxfield v. Jennings (In re Jennings),* 670 F.3d 1329 (11th Cir. 2012) for the

5  proposition that a fraudulent transfer scheme can render a debt nondischargeable under §

6  523(a)(6) is inapplicable to this case. Both *In re Bammer* and *In re Jennings* involved underlying

7  tortious conduct supporting their respective claims.

8        In *Bammer,* the fraudulent transfer arose from a debt obtained through embezzlement by

9  debtor's mother and the civil court found that a fraudulent conveyance occurred before debtor

10  filed bankruptcy. Moreover, the bankruptcy court found that debtor's actions were (1) wrongful,

11  (2) intentional, and (3) caused harm to creditor. *In re Bammer*, 131 F.3d at 790. The only

12  question in *Bammer* was whether the action was malicious; and the court found that debtor

13  satisfied the malicious element even though his subjective intent was to help his mother, because

14  debtor's actions were neither honest nor the product of misfortune. *Id*. at 792-793.  In *Jennings*,

15  the Eleven Circuit Court of Appeals emphasized the bankruptcy court's finding that the

16  defendant knowingly conspired with her ex-husband to transfer the real property with the intent

17  to place its value beyond the reach of creditors. Based on this finding, the court entered judgment

18  in favor of creditor for fraudulent transfer that is nondischargeable under§ 523(a)(6). *In re*

19  *Jennings*, 670 F.3d at 1333-1334.

20        Unlike *Bammer* and *Jennings*, Plaintiff here does not have a fraudulent conveyance or

21  fraudulent transfer judgment to support its claim. Plaintiff has not met the burden of proving that

22  Defendant's transfer of the Property constituted a fraudulent transfer. Absent such a finding,

23  Plaintiff has not offered evidence of any other tortious conduct perpetrated by Defendants

24  against Plaintiff to support a claim for relief under § 523(a)(6).

25        Here, Defendants testified that they met Plaintiff only twice, once during the sale process

26  and again at the state court trial. September 3 Trial, 1:34:12-1:36:15; September 3 Trial, 2:18:02-

27  2:18:20.

Moreover, Defendants testimony does not indicate any other tortious conduct perpetrated by Defendants towards Plaintiff. Specifically, both Geogiang Joseph Yue and Shu-Chen Wu denied ever physically attacking or injuring Plaintiff, and each stated that they had never caused damage to his property. September 3 Trial, 1:36:20-1:36:40; September 3 Trial, 2:18:20-2:18:30. Plaintiff has not alleged additional facts converting this breach of contract claim into a tort that would be nondischargeable under § 523(a)(6).

Accordingly, the Court finds that Plaintiff has failed to meet their burden for a claim for relief under § 523(a)(6) and finds in favor of Defendants.

**V.    Conclusion**

For the foregoing reasons, the Court finds that Plaintiff failed to meet its burden establishing that relief is warranted under §§ 523(a)(2) and 523(a)(6). After considering the arguments presented by the parties at trial and the admissible evidence submitted by the parties, the Court finds in favor of Defendant, and Plaintiff's request for relief under 11 U.S.C. §§ 523(a)(2) for actual fraud and 523(a)(6) for willful and malicious injury are denied. The Court will enter a separate Judgment in favor of Defendant.

###

Date: November 21, 2025

Magdalena Reyes Bordeaux
United States Bankruptcy Judge

-22-